IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| JOANNA CRUTCHFIELD, | ) | CASE NO. 1:20-CV-00572 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| Defendant. | ) | |

# Introduction

Before me[1] is an action under 42 U.S.C. § 405 by Joanna Crutchfield, on behalf of J.B., seeking judicial review of a 2020 decision of the Commissioner of Social Security that denied J.B.'s 2017 application for supplemental security income benefits.[2] The Commissioner has answered[3] and filed a transcript of the administrative proceedings.[4]

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Patricia A. Gaughan. ECF No. 10.
[2] ECF No. 1.
[3] ECF No. 12.
[4] ECF No. 13.

1

Under terms of my initial[5] and procedural[6] orders, the parties have submitted briefs,[7] together with supporting charts[8] and fact sheets.[9] The parties have met and conferred with the objective of clarifying or reducing the matters at issue.[10] They have participated in a telephonic oral argument.[11]

For the following reasons, the decision of the Commissioner will be reversed and the matter remanded.

## The ALJ's Opinion

At the time of the hearing the claimant, J.B., testified that she was in seventh grade and getting relatively good grades, with math as her favorite subject.[12] She also testified to being on the cheerleading team.[13] Her mother, however, testified that J.B. has significant difficulty getting along with others due to her mental impairments and working with counselors at school to manage her anger.[14]

After noting that J.B. was an adolescent at the time the application was filed and that she had not engaged in any substantial gainful activity since that date, the ALJ found

---

[5] ECF No. 5.
[6] ECF No. 14.
[7] ECF Nos. 17 (Crutchfield); 19 (Commissioner).
[8] ECF No. 17, Attachment (Crutchfield).
[9] ECF Nos. 16 (Crutchfield); 19, Attachment (Commissioner).
[10] ECF No. 20.
[11] ECF No. 22.
[12] Tr. at 21.
[13] *Id*.
[14] *Id*.

that J.B. has the following severe impairments: attention deficit hyperactivity disorder (ADHD); borderline intellectual functioning; oppositional defiant disorder (ODD); depressive disorder; generalized anxiety disorder; obesity; and a refractive visual disorder.[15] The ALJ further observed that J.B. has several non-severe impairments, such as allergies and contact dermatitis that do not cause any significant limitations although they were considered when formulating the RFC.[16]

Next, the ALJ concluded that J.B. does not have any impairment or combination of impairments that meet or medically equal a listing.[17] To that point, the ALJ found first that J.B. does not meet Listing 112.04 (depressive, bipolar and related disorders) and then that she does not meet Listing 112.05 (intellectual disorder).[18] In addition, the ALJ specifically reviewed Listing 112.06 (anxiety and obsessive-compulsive disorder) and Listing 112.11 (neurodevelopmental disorders), concluding in both cases that J.B. did not meet these listings.[19]

The ALJ then considered the relevant evidence to evaluate J.B.'s degree of limitation in the six functional equivalence domains. After first discussing the evidence, which includes a full scale IQ score of 70 and another full scale IQ score of 56, which lower score the ALJ attributed to "low effort" and which the ALJ determined was an "underestimate" of J.B.'s true ability, the ALJ noted that special education and psychiatric

---

[15] *Id.* at 18.
[16] *Id*. at 19.
[17] *Id.*
[18] *Id*.
[19] *Id*. at 20.

3

treatment "continued to improve the claimant's mental functioning throughout the remainder of the alleged period of disability."[20]

The ALJ found the opinions of the state agency consultants "highly persuasive" as to limitations in the six domains of function.[21] Those opinions found that J.B. has no limitations in two domains and less than marked limitations in the remaining four domains.[22] Further, the ALJ found the opinion of J.B.'s school case manager moderately persuasive, while finding the opinions of J.B.'s therapist and the consultative psychological examiner less persuasive.[23]

In the particular domains, the ALJ made the following findings:

*Acquiring and using information/ less than marked limitation*. Here, the ALJ cited that while J.B. has diminished intellectual functioning, she can complete activities with minimal adult assistance and has passing grades in both math and reading at the sixth-grade level.[24] In addition, the ALJ noted that the state agency consultants found less than marked limitations in this domain.[25]

*Attending and completing tasks/less than marked limitation*. In this domain, the ALJ highlighted that J.B. can prepare a meal for herself and is getting "relatively good grades"

---

[20] *Id*. at 21-23.
[21] *Id*. at 24.
[22] *Id*.
[23] *Id*.
[24] *Id*. at 25.
[25] *Id*.

4

in school.[26] She also observed that J.B. made "significant progress" with individual therapy and has been able to work at a "quick pace" and complete activities with minimal adult assistance.[27] She finally noted that the state agency consultants also found that J.B. has less than marked limitations in this domain.[28]

*Interacting and relating with others/ less than marked limitations*. The ALJ stated that while the evidence shows that J.B. has required treatment for depression, anxiety and defiant behavior, the record also shows that J.B. experienced "significant improvement with regular psychiatric treatment and special education intervention."[29] She also noted that J.B.'s school case manager opined that J.B. "demonstrates above average functioning with regards to getting along with her peers."[30] Finally, the ALJ again observed that the state agency consultants found that J.B. has less than marked limitations in this domain.[31]

*Moving about and manipulating objects/ no limitations*. Although J.B.'s mother testified at the hearing that J.B. had difficulty with some activities, such as sports or swimming, J.B. herself testified that she likes basketball and is on the cheerleading team.[32] The ALJ noted that J.B. is obese and has a refractive visual disorder, but further

---

[26] *Id.* at 26.
[27] *Id.*
[28] *Id.*
[29] *Id.* at 27.
[30] *Id.*
[31] *Id.*
[32] *Id.* at 28.

5

noted that neither condition has required significant, ongoing treatment.[33] In addition, the state agency consultants concluded that J.B. has no limitations in the this domain.[34]

*Caring for yourself/less than marked limitations*. Here, the ALJ once again cited J.B.'s progress in concentration and with defiant behavior after therapy.[35] The ALJ also again pointed to J.B.'s success in math and reading, as well as completing activities with minimal adult assistance.[36] Finally, the ALJ observed that the state agency consultants found less than marked limitations in this domain.[37]

*Health and physical wellbeing/less than marked limitations*. The ALJ once more pointed to J.B.'s participation in cheerleading and that neither her obesity nor her refractive visual disorder required any ongoing treatment.[38] She concluded by once more observing that the state agency consultants found that J.B. has less than marked limitations in this domain.[39]

With these findings, the ALJ found that J.B. was not disabled.[40]

**Issues on Judicial Review**

Joanna Crutchfield, o.b.o J.B., raise two issues for judicial review:

---

[33] *Id*.
[34] *Id*.
[35] *Id*. at 29.
[36] *Id*.
[37] *Id*.
[38] *Id*. at 30.
[39] *Id*.
[40] *Id*.

6

      1.     Whether the ALJ failed to properly evaluate Listing 112.05 in light of substantial evidence of [J.B.'s] intellectual disorder.

      2.     Whether the ALJ's assessment of the opinion evidence is supported by or consistent with the evidence.[41]

As to the first issue, Crutchfield argues that J.B. meets part B of Listing 112.05 in that, when tested in the third grade, she had a full scale IQ score of 70, with a perceptual reading score of 67 – thus meeting Listing 112.05(B).[42] Moreover, Crutchfield points out that in the sixth grade J.B. had a composite IQ score of 52, with a verbal score of 73 and non-verbal of 41.[43] That said, Crutchfield asserts that the ALJ dismissed the score from the third grade as being before the period at issue and minimized the score from the sixth grade by focusing on J.B.'s participation in things like choir, which do not refute the IQ scores.[44]

In particular, Crutchfield contends that the two IQ scores were accepted as valid by the school district and there is no evidence from the consultant who administered the tests that the results were invalid or questionable.[45] Thus, Crutchfield argues, J.B. has met the part B(1) requirement of Listing 112.05.[46]

Part B (2) of the listing requires that the claimant show one extreme limitation or two marked limitations in the domains of function. Here, Crutchfield contends that, contrary to the findings of the ALJ, J.B. has marked limitations in the domains of acquiring

---

[41] ECF No. 17 at 1.
[42] *Id*. at 14.
[43] *Id*. at 15.
[44] *Id*.
[45] *Id*. at 16.
[46] *Id*.

and using information, interacting and relating with others and caring for self, and so would meet the listing criteria of having two or marked limitations in domains of function.[47]

As to the second issue, Crutchfield argues that the ALJ's treatment of the opinion evidence was not supported by substantial evidence. To this point, Crutchfield contends that the ALJ gave generalized or conclusive statements to explain the level of persuasiveness assigned to the various opinions and "failed to identify with any modicum of specificity to the evidence from this record" the basis for the decision as to persuasiveness.[48]" In short, the ALJ does not cite to any specific points in the record to support her decision to find the opinions of the treating therapist and consultative therapist 'less persuasive.'"[49]

In addition, Crutchfield also points out that the opinions of special education teacher Duhr and LSW Scarpitti,[50] which the ALJ found to be moderately persuasive and less persuasive respectively, were given one year to one and a half years after the state agency reviewer's opinions, which the ALJ found to be highly persuasive.[51] "This effectively means that the opinions on which the ALJ relies were issued without reviewing the report

---

[47] Id. Crutchfield in the brief initially references the adult domains of function but later (at 18), when citing J.B.'s therapist, utilizes the appropriate terms.
[48] Id. at 21.
[49] Id. at 22.
[50] The ALJ refers to the therapist as "Danielle O'Malley" (id. at 24) but the therapist herself signed her report as "Danielle O'Malley Scarpitti." Id. at 486. Consistent with the claimant's usage in her brief, the therapist is referred to here as Scarpitti.
[51] Id.

8

of the treating therapist, the report of the special education teacher, and almost a year's worth or psychiatric treatment notes."[52]

## Analysis

A.  **Standards of Review**

Initially, this matter is reviewed under the well-established standard of substantial evidence, which need not be restated here. Further, as both sides acknowledge, the evaluation of the opinion evidence is conducted under the new rubric that eliminates the longstanding treating source rule and replaces it with a test that determines the persuasiveness of an opinion by reference to how well supported the opinion is and how consistent it is with other evidence.[53]

B.  **Application of Standards**

(1)  *Listing 112.05*

Listing 112.05(D) has four requirements.[54] Two appear in the listing's introductory clause: (1) significantly subaverage general intellectual functioning with (2) deficits in adaptive functioning.[55] To appear in section D itself: (3) an IQ score between 60 and 70

---

[52] *Id*.
[53] 20 C.F.R. § 416.920c.
[54] *Witcher, o.b.o. S.T.D. v. Comm'r of Soc. Sec.*, 2018 WL 4658736 (N.D. Ohio Sept. 29, 2018) (citation omitted).
[55] *Id*.

9

and (4) a physical or other mental impairment imposing an additional and significant limitation or function.[56]

Accordingly, as I previously discussed in *Lawson v. Commissioner*,[57] to meet this listing a claimant must satisfy both the diagnostic description in the introductory paragraph as well as the specific criteria set out in subpart D.[58] As noted, and as relevant here, the diagnostic description given in the introductory paragraph requires, *inter alia*, a finding that the claimant exhibits "significantly subaverage general intellectual functioning with deficits in adaptive functioning."[59]

That said, a claimant must meet all of the listing's four specified criteria in order to meet the listing and be considered disabled.[60]

I begin here, as I did in *Lawson*, by noting that the Sixth Circuit in *Barnet v. Commissioner* has expressly cautioned against collapsing the listing's first requirement – significantly subaverage general intellectual functioning – with its third requirement – an IQ score between 60 and 70.[61] As the Sixth Circuit in *Barnet* states, simply equating a low IQ score with significantly subaverage intellectual functioning overstates the relevance of

---

[56] *Id.*
[57] 2016 WL 1259910 (N.D. Ohio March 31, 2016).
[58] *Id*. at *3 (footnotes omitted).
[59] *Id*. (quoting listing).
[60] *Id*. (footnote omitted).
[61] *Id.* at *4 (citing *Barnett v. Commissioner*, 573 Fed. Appx. 461, 463 (6th Cir. 2014).

the IQ score and would replace "a nuanced evaluation of how the IQ scores relate to the child's customary behavior" with relance on a mere number.[62]

Here, quite apart from the IQ scores, the ALJ made no finding that J.B. has significantly below average intellectual functioning, which is the first listing requirement. Rather, when discussing the IQ scores, the ALJ stated that J.B. has a history of "diminished intellectual functioning" that placed her "overall cognitive ability in the borderline range."[63] Moreover, psychologist April Sobieralski, Psy. D., a consultative examiner who saw the claimant in 2017 and gave J.B. the Weschler intelligence test,[64] and whose opinion the ALJ found "highly persuasive,"[65] determined that "[p]rovided records indicate that J.B.'s intellectual abilities fell in the borderline range."[66] Similarly, the state reviewing sources opinion from 2017 states that the most accurate representation of J.B.'s intellectual ability was test results from 2014 that "indicated functioning in the borderline range of intelligence."[67]

In short, both the ALJ's finding and the only supporting psychological expert opinions of record all specifically state that J.B. has borderline intellectual functioning, not significantly subaverage intellectual functioning. According to *Barnet*, such a finding of borderline intellectual functioning is not equivalent to a finding of significantly subaverage

---

[62] *Id.* (quoting *Barnett*, 573 Fed. Appx at 464.
[63] Tr. at 22.
[64] *Id.* at 286.
[65] *Id.* at 24.
[66] *Id.* at 288.
[67] *Id.* at 62.

11

intellectual functioning.[68] Thus, when, as here, the ALJ finds borderline intellectual functioning, which finding is supported by all the relevant opinion evidence, that finding means that J.B. has not met and cannot meet Listing 112.05 because she cannot establish the first element of the listing, notwithstanding any subsequent showing of an IQ score.

*(2)    Evaluation of the Opinion Evidence*

As the parties acknowledge, opinion evidence is now subject to evaluation under a new rubric. Under the new regulations, the presumption of controlling weight given to the opinion of a treating source has been replaced by a standard whereby the Commissioner undertakes to evaluate the persuasiveness of all medical opinion and prior administrative medical findings using the factors of: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors.[69] That said, however, supportability and consistency are the most important factors.[70]

As stated above, Crutchfield makes two arguments in this regard, one of which is dispositive.

To that point, Crutchfield's second argument about the ALJ's handling of the opinion evidence focuses on the fact that the ALJ found the opinions of the state agency reviewers more persuasive than the opinions of J.B.'s special education teacher and her therapist despite the fact that the state agency reviewers never saw the opinions of these

---

[68] *Barnet*, 573 Fed. Appx. at 464.
[69] 20 C.F.R. §§ 416.920c(a), (c) (1)-(5).
[70] 20 C.F.R. §§ 416.920c(a), 404.920(b)(2).

two other sources and the ALJ never explained why this deficiency in the record considered by the reviewing sources should not matter.

Although the case was decided under the prior rules for assigning weight to medical opinions, my analysis in *Chorak v. Commissioner*[71] has relevance here. In *Chorak* I stated the long-established rule that while opinions from non-examining sources may receive greater weight than those of examining sources, even where the non-examining source has not reviewed the complete record, the ALJ must acknowledge that fact on the record and then provide a sufficient explanation as to why the weight assessment still favors the non-examining source that did review the entire record.[72] I further noted that failure to give such an adequate explanation will result in a finding that the weight determination was not supported by substantial evidence and that the matter needed to be remanded.[73]

Here, the ALJ made no statement on the record that she was aware that the state agency opinions pre-dated the opinions from LSW Scarpitti and special education teacher Duhr, much less did she offer any reason as to why the one to one and a half year period between the state agency opinions and the later opinions should not make the state agency opinions less than persuasive. In that regard, and as pertains to the new regulations, I note especially that the final factor to be considered in evaluating the persuasiveness of an opinion states:

---

[71] *Chorak v. Conm'r of Soc. Sec.*, 2019 WL 7290957 (N.D. Ohio Dec. 30, 2019).
[72] *Id*. at *6 (citation omitted).
[73] *Id*.

13

*(5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim.*[74]

Here, the lack of any acknowledgement or discussion by the ALJ of the fact that the opinions found most persuasive were rendered without those persuasive opinions showing that they "had familiarity with the other evidence in the claim," indicates that the ALJ did not follow the guidelines for determining the persuasiveness of an opinion and so that determination is not supported by substantial evidence.[75] "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."[76]

Accordingly, because the findings regarding persuasiveness of the various opinions cannot be here found to be supported by substantial evidence, and because the ALJ findings regarding the persuasiveness of the opinions is inextricably bound up with the ALJ's findings as to the limitations of the various functional domains, those findings as well must be found not supported by substantial evidence.

---

[74] 20 C.F.R. § 416.920(c)(5).
[75] *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 374 (6th Cir. 2013).
[76] *Id.* (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**Conclusion**

Accordingly, for the reasons stated, I find that the decision of the Commissioner is not supported by substantial evidence and is therefore reversed, with the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 30, 2021                               s/William H. Baughman Jr.
                                                        United States Magistrate Judge